IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 7:08 CR 54 |
| | ) | |
| WILLIAM A. WHITE, | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION
FOR A NEW TRIAL ON COUNT FIVE OF THE INDICTMENT**

The United States of America, by and through its counsel of record, respectfully requests the Court to deny the Defendant's *pro se* Motion for A New Trial on Count Five of the Indictment (Doc. No. 160, 164).[1]

The Defendant's motion should be denied for the following five reasons. First, the motion is not timely. Under the Federal Rules of Criminal Procedure, any motion for a new trial that is not based upon newly discovered evidence must be filed within seven days after the verdict or finding of guilty. Fed. R. Crim. Pro. 33(b)(2). Second, the Court has already rejected, pre- and post-trial, the Defendant's argument that the Internet postings in Count Five were protected by the First Amendment. The Defendant has offered nothing new to change the Court's position. Third, any alleged impropriety arising from a remark made by the Government during trial was properly remedied by the Court's curative instruction to the jury. The Defendant cannot show the Court committed

---

[1] Mr. David Damico has confirmed with the Government that the Defendant is still represented by his trial counsel, Mr. Damico and Mr. Raphael Farris, and that this motion is nonetheless filed *pro se*.

reversible error by denying his motion for a mistrial.  Fourth, the Government's remarks during summation were proper and no reversible or plain error occurred.  Fifth, the Defendant has mischaracterized materials as "exculpatory."  The Government provided these materials to the Defendant pre-trial as part of discovery and the Defendant had ample opportunity to use them in his defense.  The Defendant suffered no prejudice constituting reversible or plain error.

### I.     Procedural History

On December 11, 2008, the Grand Jury returned a seven-count indictment against the Defendant.  Counts One, Four, Five, Six, and Seven charged the Defendant with violating 18 U.S.C. § 875(c) by transmitting threatening communications to five different victims via interstate commerce.  Specifically, Count Five charged the Defendant with violating § 875(c) when he "knowingly transmitted in interstate commerce communications by telephone and Internet postings directed at Dr. KK, a university professor and administrator, containing a threat to injure Dr. KK."  Count Two charged the Defendant with violating 18 U.S.C. § 875(b) by threatening the victim of Count One and doing so with the intent to extort a thing of value from the victim.  Count Three charged the Defendant with violating 18 U.S.C. § 1512(b)(1) by using intimidation to influence, delay or prevent the testimony of a sixth set of victims.

On December 18, 2009, a federal jury convicted the Defendant of violating three counts of 18 U.S.C. § 875(c) and one count of 18 U.S.C. § 1512(b)(a), finding that the Defendant threatened the victims of Counts One, Five, and Six, and that the Defendant intimidated the victims of Count Three with an intent to influence, prevent or delay their

testimony in an official proceeding. The jury acquitted the Defendant on Counts Two, Four, and Seven.

On December 29, 2009, the Defendant, who had made an oral motion for judgment of acquittal prior to verdict, filed a written "Motion for Acquittal" as to all counts of conviction. On February 4, 2010, the Defendant's "Motion for Acquittal" was granted as to Count Six and denied as to the remaining counts of conviction, Counts One, Five, and Three.

## II. The Defendant's Motion Is Not Timely

The Defendant's Motion for a New Trial is not timely. Federal Rule of Criminal Procedure 33 specifies, in relevant part, that:

> a) Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.
> …
> b) (2) Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within seven days after the verdict or finding of guilty.

Fed. R. Crim. Pro. 33.

### A. The Defendant's Motion Does Not Rely Upon Newly Discovered Evidence

The Defendant does not base his motion on newly discovered evidence. Relying upon the Court's recent decision to grant Defendant's Motion for Acquittal with regard to Count Six, the Defendant now alleges that the Internet postings charged in Count Five were protected speech. Def. Mot. for New Trial, p. 2. The Court's recent decision does not constitute "newly discovered evidence."

3

The Defendant also claims that the Government made an improper remark during trial which was not adequately remedied by the Court's instruction to the jury. This remark is part of the trial record, was known to the Defendant at the time of the jury's verdict, and does not constitute newly discovered evidence.

The Defendant next claims that the Government made an improper comment during summation implying that known exculpatory evidence did not exist. Again, the Government's comments are part of the trial record, were known to the Defendant at the time of the jury's verdict, and do not constitute newly discovered evidence. Furthermore, the allegedly exculpatory evidence, identified by the Defendant in his motion and in his cover letter, was disclosed to the Defendant pre-trial and also does not constitute newly discovered evidence. Def. Mot. for New Trial, pp. 4-5, Def. Cover Letter (Doc. 160-2). [2]

In conclusion, the Defendant's motion raises no issue based upon newly discovered evidence.

### B. The Motion Was Filed Sixty Days Late

Because the Defendant's motion does not raise any issue based upon newly discovered evidence, it must have been filed within seven days of the jury's verdict of December 18, 2009. Fed. R. Crim. Pro. 33(b)(2). The motion thus should have been filed on December 28, 2009. Instead, the motion was filed on February 26, 2010, sixty days late. The Defendant was represented by counsel at all relevant times, the Defendant

---

[2] Defendant referenced an internet posting and multiple Skype calls in his motion and cover letter. The posting was provided to the Defendant on October 2, 2009. The Government notified the Defendant on October 8, 2009, that the Skype calls existed and would be copied to a hard drive to be provided by the Defendant. The Defendant provided the Government with said hard drive on October 29, 2009. The recordings were provided to the Defendant on November 9, 2009.

4

has offered no reason for the tardiness of the Defendant's motion, and the Defendant has not asked for the Court's leave to file the instant motion late. The instant motion, therefore, must be denied as untimely.

### III. A New Trial Is Not Warranted Under The High Standard For Sufficiency Claims Pursuant To Rule 33

A new trial pursuant to Rule 33 is a remedy which should only be granted "sparingly" and the Fourth Circuit has stated that jury verdicts should stand except in "rare circumstances." United States v. Smith, 451 F.3d 209, 216-17 (4th Cir. 2006). When the claim for a new trial is based upon insufficiency of the evidence, a Rule 33 motion should only be granted "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985). Unlike a motion for judgment of acquittal, made pursuant to Federal Rule of Criminal Procedure 29, in considering a motion for new trial, the district court examines all evidence introduced at trial and may evaluate for itself the credibility of witnesses. Id. Nonetheless, "a court should not lightly substitute its judgment for that of the jury." United States v. Chin, 181 F.3d 92 (table), 1999 WL 333137 (text) at *1 (4th Cir. 1999) (upholding district court's denial of motion for new trial despite fact that court stated court found main witness incredible and would not have found defendant guilty).

The Defendant does not assert grounds which meet this standard. The Defendant is essentially arguing that he is entitled to a new trial because the weight of the evidence did not support the jury's verdict: "[t]he trouble with the jury verdict on Count Five is

5

that Count Five charges, in part, speech which the Court found to be protected in Count Six, and which the jury found, erroneously, to be sufficient to convict the Defendant." Def. Mot. for New Trial, p. 3. Of course, this mischaracterizes the Court's order which found the evidence sufficient to support the jury's guilty verdict on Count Five. Mem. Op. and Order, pp. 19 -21; see also discussion p. 7, infra. The Defendant requests relief by asking the Court to "strike from the indictment the phrase 'and Internet postings' and submit to the jury solely the question of whether Defendant made the threatening phone call alleged in the indictment."[3] Def. Mot. for New Trial, p. 2. The Defendant's sufficiency claim must fail because he has not demonstrated that the "evidence weighs so heavily against the verdict that it would be unjust to enter judgment" as required by Rule 33. In fact, the Court has already determined that the weight of the evidence at trial supported a finding of guilty under the less onerous Rule 29 standard.

Whether or not the Internet postings in Count Five were protected by the First Amendment is a question for the jury. See United States v. Roberts, 915 F.2d 889 (4th Cir. 1990) ("Generally, what is or is not a true threat is a jury question."); United States v. Maisonet, 484 F.2d 1356 (4th Cir. 1973) (stating, with regard to a motion for acquittal, that "[i]f there is substantial evidence that tends to show beyond a reasonable doubt that an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury, the court should submit the case to the jury."). The jury considered the Internet postings in Count Five in the context of the phone calls to Dr.

---

[3] Striking language from the Indictment is not a remedy provided by Rule 33. If the Court were to find that the "evidence weighs so heavily against the verdict that it would be unjust to enter judgment" on Count Five, the sole remedy provided by Rule 33 would be for the Court to grant a new trial on the existing Indictment. Fed. R. Crim. Pro. 33.

Kerr's home and office, as well as all of the other contextual evidence offered at trial. The jury found that the Internet postings, together with the telephone calls, were not protected by the First Amendment.

The Court recently upheld this verdict in the Court's February 4, 2010, Memorandum Opinion and Order on the Defendant's Motion for Acquittal. Mem. Op. and Order, pp. 19 -21. Under Rule 29, a jury verdict's stands unless "no substantial evidence that would permit any rational trier of facts to find the defendant guilty may the motion be granted." United States v. Capers, 61 F.3d 1100, 1107 (4th Cir.1995). Thus, the Court has already found that substantial evidence exists which would permit a rational trier of fact to find the Defendant's conduct was a true threat and not protected by the First Amendment.

The Defendant has offered no new argument which would allow the Court to now find that the evidence "weighs so heavily against the verdict that it would be unjust to enter judgment" as required by Rule 33. Arrington, 757 F.2d at 1485. Instead, the Defendant cites the Court's reasoning in its decision on the Defendant's motion for acquittal on a different count, Count Six, and attempts to apply it to Count Five -- despite the fact that the Court independently analyzed Count Five in its decision and found the evidence sufficient to support the jury's conviction. The instant motion is a bizarre attempt to gain a new trial on Count Five based upon First Amendment grounds by relying upon the very decision which rejected the Defendant's First Amendment argument as to Count Five. Because the Court has already held that substantial evidence exists which permits a rational trier of fact to find the defendant the guilty of Count Five,

and because the Defendant has offered no new rationale for disturbing that decision, the Court should find that the Defendant has not demonstrated that "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment."

### IV. A New Trial Is Not Warranted Because No Reversible Error Was Committed

The Defendant's motion must also be denied because the Court committed no reversible error. The Defendant essentially claims that he deserves a new trial because: 1) the Court erred by refusing to declare a mistrial at the Defendant's request, after a comment made by the Government during trial; and, 2) reversible or plain error occurred when the Government commented on the implausibility of a defense theory during summation. As fully discussed above, the granting of a new trial under Rule 33 is a remedy which should only be granted "sparingly." Arrington, 757 F.2d at 1485. When the basis for the Rule 33 motion is prosecutorial misconduct, the motion may only be granted where a reversible trial error occurred. United States v. Jackson, 2006 WL 1587457, *1 (W.D.Va. 2006) (J. Moon) (internal citations omitted); vacated on other grounds, Jackson v. United States, 129 S.Ct. 1307 (2009). A prosecutor's comments may lead to reversible error when: 1) the prosecutor's remarks were, in fact, improper; and, 2) the remarks prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. United States v. Golding, 168 F.3d 700, 702 (4th Cir. 1999) (internal quotations omitted); United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). No reversible error occurred when the Court denied the Defendant's motion for a mistrial and when the Government commented on a defense theory during summation.

8

### A. The Court Committed No Error in Denying Defendant's Motion for a Mistrial Based Upon a Comment Made by the Government During Trial

The Defendant argues that the Government's comment "challenging the Defense to put on James Tweedy, one of two men who saw the caller ID records before they were lost by the government is significant in causing a mistrial on this count…." Def. Mot. for New Trial, p. 4.  The comment to which the Defendant refers was made in response to the Defense objection that the Government was not calling a witness that the Defense deemed relevant.  The comment was immediately followed by an instruction by the Judge that the jury was to disregard the comment and that the Government and only the Government bore the burden of proof at trial.  This instruction was given twice.  The Defendant moved for a mistrial and the Court denied the motion.

The Court did not commit reversible error when it denied the Defendant's motion for a mistrial.  The comment made by the Government was isolated and immediately remedied by the Court through a curative instruction given to the jury twice.  The Fourth Circuit has repeatedly found in similar situations that a curative instruction is an appropriate remedy and that the Defendant's right to a fair trial was not prejudicially affected.  United States v. Morsley, 64 F.3d 907, 913 (4th Cir. 1995) (prosecutor's improper comments did not constitute reversible error where court immediately gave curative instruction, comments were isolated, and proof was abundant); United States v. Scheetz, 293 F.3d 175, 185-86 (4th Cir. 2002) (same); see also United States v. Hedgepeth, 418 F.3d 411, 421 (4th Cir. 2005) (no prejudice when lower court promptly gave limiting instruction; "limiting instructions generally obviate prejudice"); United

9

States v. Powers, 59 F.3d 1460, 1468 (4th Cir. 1995) (cautionary or limiting instructions generally appropriate remedy for possibly prejudicial comments, especially when danger of prejudice is small in light of weight of evidence). When an instruction is given by the court, the jury is presumed to have followed it. Old Chief v. Untied States, 519 U.S. 172, 196 (1997); United States v. Williams, 461 F.3d 441, 451 (4th Cir. 2006). Therefore, the Defendant was not prejudiced, the Court did not commit reversible error when denying the Defendant's motion for a mistrial, and a new trial is not warranted under Rule 33.

### B. The Government's Comments During Summation Were Proper

#### 1. The Comments Did Not Burden Shift

The Government's comments during summation were appropriate. The Defendant justifies his claim that a mistrial was warranted by mischaracterizing the Government's closing remarks as burden-shifting.[4] Specifically, the Defendant claims that the Government "ask[ed] rhetorically who the person imitating White had been" and that the Government "stat[ed] Defense had put on no evidence of a person or persons imitating Defendant," thereby "poison[ing] the jury's mind as to reasonable doubt." Def. Mot. for New Trial, pp. 4-5.

The Government did comment on the implausibility of the defense theory that the Defendant did not make the call answered by Carol Bedgar.[5] However, the Government never "rhetorically" asked "who the person imitating White had been" nor did the

---

[4] The Defendant argues that the Government comments were "significant in causing a mistrial on this count." Def. Mot. for New Trial, p. 4. The Defendant did not object to any comments made during summation; thus, the Government interprets claim to be that the Court committed reversible error when it failed to sua sponte declare a mistrial based upon the Government's summation or that the comments were so prejudicial as to constitute plain error.

[5] Bedgar works at the University of Delaware and answers Dr. Kerr's work phone.

10

Government ever state that "Defense had put on no evidence of a person or person imitating Defendant." Rather, the Government argued that the evidence offered at trial did not support the Defense theory that the Defendant did not place the call received by Bedgar:

> The suggestion that defendant White did not place the phone call that Carol Bedgar answered is completely betrayed by every fact before you. First of all, Carol had no reason to make up that Bill White called her. Bill White's own phone records show that he made the call. And the fact that Carol Bedgar told you she wasn't sure if the call was blocked or not blocked, well, that's completely understandable given the circumstances. And the suggestion that someone just happened to call Carol Bedgar, impersonating Bill White at the exact same time that Bill White's own phone records show that he called, is just ridiculous.

Closing Argument Tr. p. 15 (attached hereto as Exhibit A). See also Exhibit A, pp. 88-89. The Government's argument was properly made in response to the defense theory, explored fully on cross-examination and argued in the Defendant's closing, that the Defendant did not place the call which was answered by Bedgar. See Exhibit A, Closing Tr. pp. 74-78. Moreover, the Government made no impermissibly burden-shifting comments in advancing this argument. Thus, the comments do not constitute error of any kind and the Defendant's motion must be denied.

### 2. The Comments Did Not Imply That Exculpatory Evidence, Known To The Government, Did Not Exist

The Defendant also contends that the Government's summation comments were improperly misleading in light of known exculpatory evidence. Def. Mot. for New Trial, p. 5. The Defendant claims that the following "exculpatory" evidence exists that the Defendant did not place the call answered by Bedgar: 1) that the call to Bedgar was

11

placed by a blocked number, while the Defendant does not block his number when making phone calls; 2) that a white supremacist "MB" has "discussed calling people on the phone and saying they 'should be shot;'" 3) that MB has a history of calling and impersonating people; 4) that, in an Internet posting, MB admitted to calling Dr. Kerr, and 5) that MB made calls to KM, an attorney in another proceeding, and denied making those calls.  Id., Addendum (Doc. 164).  This argument is without merit and, as above, the Defendant has engaged in blatant mischaracterization to support his motion.

### a. The Government Properly Commented On Whether The Call Received By Bedgar Was From A Blocked Number And The Defendant Has Shown No Harmful Prejudice

The call records and testimony of Bedgar are not exculpatory.  Contrary to the Defendant's characterization, Bedgar did not testify that the call was placed by a blocked number; rather, Bedgar stated that the call *may have been* placed by a blocked number but that she could not recall.  The Defendant argues that evidence the call was blocked was exculpatory because call records establish that the Defendant does not block his phone number.  While the Defendant's number appeared on the home phone records of Dr. Kerr and Mayor Charles Tyson, this evidence in no way establishes that the Defendant never blocked his phone number when making threatening calls and did not block his number when making the phone call answered by Bedgar.  The Defendant's mischaracterization of Bedgar's testimony and his interpretation of call records does not constitute exculpatory evidence.

In any case, the Defendant suffered no articulable prejudice.  The Defendant had ample opportunity to cross-examine all of the Government's witnesses as to his theory

12

and made closing arguments based on this theory.  Thus, no harmful prejudice arose out of any comments made by the Government during summation with regard to the blocked or unblocked status of the call received by Bedgar and the motion should be denied.

> **b.  The Government's Summation Comments Were Proper; No Exculpatory Evidence That Another Individual Called Bedgar Exists**

The Government has no evidence that MB has ever called people and stated that they should be shot, that MB has a history of calling and impersonating people, nor that MB admitted to calling Dr. Kerr.  While the Defendant argues that exculpatory evidence exists that MB made the call to Bedgar, he once again engages in mischaracterizations in making his argument.  The Defendant offers the following "exculpatory evidence" with regard to MB:  1) that MB has "discussed calling people on the phone and saying they 'should be shot;'" 2)  that MB has a history of calling and impersonating people; 3) that MB admitted to calling Dr. Kerr, and 4) that MB made calls to KM, an attorney in another proceeding, and denied making those calls.  Def. Mot. for New Trial, p.5, and Addendum.

The Government has attached, as exhibits, transcripts of the portions of the calls cited by the Defendant in his cover letter, as well as the Internet posting to which he refers in his motion.  The exhibits are obviously not exculpatory and demonstrate the Defendant's penchant for mischaracterization  At most, the Skype call exhibits reflect the fact that a group of white supremacists, including MB, unsuccessfully attempted to make prank calls -- prank calls which were not charged in the Indictment, were not made to any victim in the case, were not offered as evidence at trial, and were not referenced at trial.

13

The Skype call exhibits do not establish that MB or anyone else ever tried to impersonate White. The Internet posting cited by the Defendant, ostensibly made by "MB," merely indicates that other people attempted to call the University of Delaware -- a fact testified to by Bedgar and others. In addition, the post by "MB" indicates that the calls were made the day after the Defendant had already called Dr. Kerr at home and work. It is unclear from the posting whether "MB" called Dr. Kerr, President Harker or both and it is similarly unclear whether "MB" actually reached Dr. Kerr, President Harker or both. In short, none of the materials relied upon by the Defendant demonstrate that another person called Bedgar. The Government's summation comments were wholly appropriate and no reversible error occurred.

Even if the Court were to find that any of this evidence is exculpatory, the Defendant was in possession of all of said evidence at the time of trial. See fn 2, supra. The Defendant thus had ample opportunity to cross-examine the Government's witnesses with these materials and, if he so chose, to utilize these materials in his own case. The Government's comments did not suggest that no other people called the University of Delaware, quite the contrary in fact, nor did the Government suggest that people associated with the Defendant had never made calls to others. Therefore, the Defendant cannot show that he was prejudiced in any way by the Government's comments and his motion should be denied.

### V. Conclusion

The Defendant's motion should be denied as the motion is not timely, the weight of the evidence supported the jury's verdict, and no reversible error occurred at trial.

Wherefore, the Government respectfully requests the Court to deny the Defendant's motion.

    Respectfully Submitted,

    S/ John Cotton Richmond
    John Cotton Richmond
    Prosecutor

    S/ Cindy Chung
    Cindy Chung
    Prosecutor

### CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this pleading with the Clerk of Court using the ECF system which sent notifications to the counsel of record.

    S/ Cindy Chung
    Cindy Chung